**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-60334
_____

ROGER REEVES,

Plaintiff-Appellee,

versus

SANDERSON PLUMBING PRODUCTS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

Before HIGGINBOTHAM, JONES and WIENER, Circuit Judges.

Per Curiam:

In this age discrimination case, Defendant-Appellant Sanderson Plumbing Products, Inc. ("Sanderson") appeals the district court's order denying Sanderson's post-verdict motion for judgment as a matter of law ("JML"), and granting Plaintiff-Appellee Roger Reeves's motion for front pay. After reviewing the record, we conclude that Reeves did not prove a violation of the Age Discrimination in Employment Act ("ADEA") by a preponderance of the evidence. Hence, we reverse the district court's order and render judgment in favor of Sanderson.

# I

## FACTS AND PROCEEDINGS

Fifty-seven year old Reeves was employed for 40 years by Sanderson — a company involved in the manufacture of toilet seats and covers. At the time of his discharge, Reeves worked in a department of the company known as the Hinge Room. The Hinge Room ran a regular line which was supervised by Reeves, and a special line which was supervised by 35 year old Joe Oswalt. Forty-five year old Russell Caldwell was the manager of the department and he supervised both Reeves and Oswalt.

At all times relevant to this case, a union represented Sanderson's production and maintenance employees. The union contract included general work rules, part of which dealt specifically with attendance. Pursuant to these rules, an employee who was absent from work in excess of five percent of his scheduled hours in a month, or who was late twice in a month, was subject to disciplinary action.

As part of his essential duties as a supervisor, Reeves was required to keep daily, weekly, and monthly records of the attendance and tardiness of employees under his control. These records were reviewed by Reeves for accuracy before he passed them on to Caldwell, who then sent them on to data processing.

In the fall of 1993, Sanderson's Department of Quality Control — under the direction of Powe Chesnut — conducted a review of the

2

operating procedures in the Hinge Room.  According to Sanderson, the study revealed productivity problems on Reeves's regular line, stemming from a lax assembly line operation.  As a result, Reeves was placed on a 90-day probation for unsatisfactory work performance.

Nearly three years later, in the summer of 1995, Caldwell informed Chesnut — who by this time had become Director of Manufacturing — that the Hinge Room was again having difficulty meeting its production requirements due to pervasive absenteeism and tardiness.  Because the Hinge Room records did not reflect employee attendance problems, however, Chesnut requested that Lucille Reeves, then-Manager of Quality Control, conduct an audit of the department's time sheets.  This investigation revealed numerous timekeeping errors and misrepresentations on the part of Caldwell, Reeves, and Oswalt.  Dana Jester, Vice President of Human Resources, conducted an independent review of the records, and confirmed Quality Control's findings.  Armed with these results, Chesnut, Jester, and Vice President of Operations Tom Whitaker, recommended to Company President Sandra Sanderson[1] that Caldwell and Reeves be dismissed.[2]  Ms. Sanderson — who was 52 years old at

---

[1]The record is uncontradicted that Ms. Sanderson had married Chesnut in December 1988.

[2]Chesnut testified at trial that, had Oswalt not voluntarily terminated his employment several months earlier, Oswalt would have been subject to dismissal along with his co-workers, Reeves and Caldwell.

the time —— heeded this advice, firing both Caldwell and Reeves in October 1995.  Thereafter, Sanderson filled Reeves's position, on three successive occasions, with men in their thirties.

In June 1996, Reeves filed suit, claiming that Sanderson terminated him because of his age, in violation of the ADEA. Reeves based his claim on two age-related statements allegedly made by Chesnut several months before Reeves's dismissal, namely (1) that Reeves was so old that he "must have come over on the Mayflower," and (2) that he was "too damn old to do the job."

At the conclusion of the trial, the jury returned a verdict in favor of Reeves, awarding him $35,000 and finding that Sanderson discriminated willfully on the basis of age in its adverse employment action.  After the verdict, Sanderson renewed its previous motion for JML, and moved, in the alternative, for a new trial.  At the same time, Reeves filed a motion seeking front pay. The district court denied Sanderson's motions, and entered judgment in favor of Reeves in the amount $70,000 —— adding $35,000 in liquidated damages to the jury's compensatory damages in that amount based on the jury's determination of willfulness.[3]  In addition, the court awarded Reeves $28,490.80 in front pay, representing two years of lost income.  Sanderson timely filed a notice of appeal.

---

[3]See 29 U.S.C. § 626(b)(1990)(providing that "liquidated damages shall be payable only in cases of willful violations of this Act.").

4

ANALYSIS

## A.  Standard of Review

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[4]  We review the denial of such motions <u>de novo</u>, applying the same standard as the district court.[5]  A JML is appropriate if the "facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not have concluded" as the jury did.[6]  Applying this standard to the instant case, the district court's judgment should be reversed only if "there is no legally sufficient evidentiary basis for a reasonable jury to find" that Sanderson discharged Reeves because of his age.[7]

## B.  The ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."[8]  To establish a violation of the ADEA, a plaintiff must prove, by a

---

[4]<u>Harrington v. Harris</u>, 118 F.3d 359, 367 (5th Cir. 1997).

[5]<u>Nichols v. Lewis Grocer</u>, 138 F.3d 563, 565 (5th Cir. 1998).

[6]<u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 148 (5th Cir. 1995).

[7]FED. R. CIV. PROC. 50(a)(1).

[8]29 U.S.C. § 623(a)(1)(1990).

preponderance of the evidence, intentional discrimination on the part of his employer.[9]  As direct evidence of discrimination is rare, plaintiffs may rely on indirect evidence and reasonable inferences to establish an ADEA claim under the McDonnell Douglas burden-shifting analysis.[10]

Under this analysis, a plaintiff must first present a prima facie case, thereby establishing a rebuttable presumption of age discrimination.[11]  If the plaintiff meets this burden, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the challenged employment action.[12]  If the employer presents such evidence, then the presumption of discrimination fades, and the plaintiff must prove that the employer's articulated reason is a pretext for unlawful discrimination.[13]

To establish pretext, a plaintiff must prove not only that the

---

[9]Price v. Marathon Cheese Corp., 119 F.3d 330, 336 (5th Cir. 1997).

[10]Id.

[11]Id.  There are four elements to a prima facie case of discriminatory discharge under the ADEA, including proof that the plaintiff was (1) discharged; (2) qualified for the position; (3) within the protected class at the time of the discharge; and (4) either i) replaced by someone outside the protected class, ii) replaced by someone in the protected class but younger than the plaintiff, or iii) otherwise discharged because of his age. Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993).

[12]Brown v. CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996).

[13]Price, 119 F.3d at 337.

employer's stated reason for its employment decision was false, but also that age discrimination "had a determinative influence on" the employer's decision-making process.[14]  Age-related comments may serve as sufficient evidence of discrimination if the remarks are (1) proximate in time to the termination; (2) made by an individual with authority over the challenged employment decision; and (3) related to that employment decision.[15]  Mere "stray remarks" —— i.e., comments which are "vague and remote in time" —— however, are insufficient to establish discrimination.[16]

### 1. Sufficiency of the Evidence

On appeal, Sanderson does not challenge the sufficiency of the evidence supporting Reeves's prima facie case of age discrimination.[17]  Rather, Sanderson argues that it articulated a legitimate, nondiscriminatory explanation for firing Reeves: Reeves's shoddy record keeping.  Because Reeves failed to offer evidence sufficient to prove both that this reason is untrue and that age is what really triggered Reeves's discharge, argues

---

[14]Id.

[15]Brown, 82 F.3d at 655.

[16]Id.; Price, 119 F.3d at 337.

[17]Indeed, when, as here, a case has already been tried on the merits, whether the plaintiff properly made out a prima facie case is no longer relevant.  United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983).  Instead, the important inquiry is whether the plaintiff has "produced sufficient evidence for a jury to find that discrimination has occurred." Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992).

Sanderson, it is entitled to judgment as a matter of law. We agree.

At trial, Chesnut testified that he became aware of timekeeping problems in the Hinge Room after Caldwell — the department manager — complained of inadequate production resulting from absenteeism. This complaint prompted an investigation which uncovered numerous errors in the department's attendance records. Because of specific misrepresentations and errors made by Reeves, argues Sanderson, employees under Reeves's control were being paid for time they did not work, and were not being disciplined for their habitual absenteeism and tardiness. Reeves testified that he was familiar with the company's attendance policy, as well as his timekeeping responsibilities as a supervisor under that policy. In light of this admission, argues Sanderson, Reeves's failure to keep accurate records in accordance with the policy amounts to unsatisfactory work performance, which is a legitimate, nondiscriminatory basis for dismissal.

Reeves attempts to cast suspicion on Sanderson's proffered explanation by first asserting that Sanderson's explanation changed between the time of Reeves's discharge and trial. When he was fired, claims Reeves, he was told that he had caused a specific employee to be paid for time she had not actually worked. In contrast, Reeves argues, Sanderson defended its employment decision at trial by claiming that Reeves's timekeeping mistakes had resulted in the overpayment of numerous employees. Although proof

8

that an employer lied to its employee about its reasons for discharge does, under some circumstances, raise a "red flag" of pretext,[18] the inconsistency noted by Reeves in this case can hardly be considered mendacious. Sanderson has, at all times, supported its decision to fire Reeves with the charge that Reeves's work performance was unsatisfactory. That Sanderson may have explained this charge at the time of dismissal with only one instance of inaccurate record keeping, but buttressed its defense by adducing evidence of other similar infractions at trial smacks more of competent trial preparation than telling a lie.

Reeves goes on, however, to challenge the veracity of Sanderson's allegation that he engaged in inaccurate record keeping at all. At trial, Reeves testified that he was always very careful to ensure that his employees arrived at their work stations on time. In addition, he claimed that any employee who was permitted to clock in early or stay late —— and thereby receive additional pay —— had extra work assignments to perform. According to Reeves, if any record keeping errors were made, they were the result of Caldwell's inattentiveness and not his own. Moreover, Reeves points out, at trial Chesnut was unable to testify as to the cost to the company, if any, of Reeves's alleged record falsifications. Based on this evidence, claims Reeves, a reasonable jury could have found that Sanderson's explanation for its employment decision was

[18]<u>Haun v. Ideal Indus., Inc.</u>, 81 F.3d 541, 546 (5th Cir. 1996).

pretextual.

On this point, Reeves very well may be correct. Even so, whether Sanderson was forthright in its explanation for firing Reeves is not dispositive of a finding of liability under the ADEA. We must, as an essential final step, determine whether Reeves presented sufficient evidence that his age motivated Sanderson's employment decision.

In an attempt to satisfy this burden at trial, Reeves testified that Chesnut — while serving as Director of Manufacturing — made the above-quoted age-related comments just months before Reeves was terminated. As Chesnut was one of three people who recommended his termination to Ms. Sanderson, argues Reeves, Chesnut's comments should be taken as sound evidence of the company's underlying discriminatory motives.

Reeves also expressed the belief that he was treated less favorably than Sanderson's younger employees. This belief, Reeves now claims, is confirmed by Oswalt's testimony that Chesnut treated Reeves like a child. As further evidence of Sanderson's disparate treatment, Reeves points to his 1993 probation, and notes that the 30-something Oswalt was not put on probation despite a similarly lagging production level on the Hinge Room's special line. Likewise, argues Reeves, when Quality Control initiated its investigation of his timekeeping records in 1995, none of the supervisors from other departments were singled out for such scrutiny.

Considering all of the evidence in a light most favorable to Reeves, we nevertheless conclude that there was insufficient evidence for a jury to find that Sanderson discharged Reeves because of his age. Despite the potentially damning nature of Chesnut's age-related comments, it is clear that these comments were not made in the direct context of Reeves's termination. In addition, Chesnut was just one of three individuals who recommended to Ms. Sanderson that Reeves be terminated, and there is no evidence to suggest that any of the other decision makers were motivated by age. In fact, the record shows that at least two of the decision makers were themselves over the age of 50 — Ms. Sanderson at 52, and Jester at 56. Furthermore, the fact remains that, as a result of the 1995 investigation, each of the three Hinge Room supervisors was accused of inaccurate record keeping, including not only Reeves and Caldwell, but 35 year old Oswalt as well. Finally, there is evidence that, at the time Reeves was dismissed, 20 of the company's management positions were filled by people over the age of 50, including several employees in their late 60's.

Based on our plenary review, we find that Reeves did not introduce sufficient evidence of age discrimination to support the jury's finding of liability under the ADEA. For this reason, we reverse and render judgment in favor of Sanderson.

REVERSED AND RENDERED.

11