**Charlene L. BOWEN, Appellant,**

v.

**EL PASO ELECTRIC COMPANY, Appellee.**

No. 08–00–00220–CV.

Court of Appeals of Texas, El Paso.

July 12, 2001.

Rehearing Overruled Aug. 1, 2001.

Mike Milligan, El Paso, for Appellant.

David Hughes, Angela Morrow Nickey, Robles, Bracken, Coffman & Hughes, L.L.P., El Paso, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

### OPINION

LARSEN, Justice.

This appeal concerns the granting of summary judgment in an employment discrimination case. In four interrelated issues,[1] plaintiff Charlene Bowen urges that she presented evidence establishing her prima facie showing of discrimination, raised fact questions on whether the employer's proffered legitimate reasons for dismissal were pretextual, and that she is therefore entitled to trial on the merits. Finding that the U.S. Supreme Court recently addressed this issue in *Reeves v. Sanderson Plumbing Products*,[2] and that under a *Reeves* analysis summary judgment was error, we reverse and remand for further proceedings.

### STANDARD OF REVIEW

The Electric Company filed both no-evidence and traditional summary judgment motions. In reviewing a traditional summary judgment, the moving party has the burden of establishing that no material fact issue exists and it is entitled to judgment as a matter of law.[3] In determining whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true, and indulge every reasonable inference in favor of non-movant.[4] Because the granting of summary judgment is a question of law, we review the trial court's decision de novo.[5]

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a

---

1. Bowen's issues presented for review are: (1) in the absence of reasons given by the trial court for its summary judgment, it must be presumed that the court acted on the basis of one or more of the arguments advanced to it in the motion for summary judgment; (2) the summary judgment motion was legally insufficient to challenge any of the elements of Mrs. Bowen's prima facie case; (3) Ms. Bowen presented sufficient evidence of pretext to create a genuine issue of material fact; and (4) the trial court improperly used the "pretext plus" standard for evaluating the sufficiency of Mrs. Bowen's summary judgment evidence.

2. 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

3. Tex.R.Civ.P. 166a(c); *M.D. Anderson Hosp. and Tumor Institute v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000); *Lear Siegler v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

4. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

5. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994).

directed verdict.[6] The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence.[7] The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements.[8] When reviewing a no-evidence summary judgment, we view the evidence in the light most favorable to the non-movant disregarding all contrary evidence and inferences.[9]

■ Where the trial court has granted summary judgment without stating the grounds for doing so, as here, we must consider all grounds for judgment presented in the motion and affirm if any has merit.[10]

## FACTS

Using the standard for reviewing summary judgment, the facts before the trial court were as follows. Charlene Bowen is African American. She was originally hired by the El Paso Electric Company as a meter reader in November 1993. In February 1996, she made a lateral transfer to central switchboard operator, which she considered a promotion, and which required her to complete a six-month probationary period. She was terminated on August 12, 1996. The Electric Company replaced Bowen with a Hispanic female.

During her probationary period, Bowen found a lengthy note written by a temporary employee, Pat Cordova, to Sonia Montes, who shared a work station with Bowen. The note rambled for two pages about haircuts, bundt cakes, school registration, and what to wear on Saturday night.[11] It also contained the following:

> Chaka Khan [12] is really getting on my nerves. I don't see how Susie's group can stand her. Everything revolves around her—I mean everything. You can't get a word in edgewise. She'll shut you up. I suppose Susie hasn't spoken w/ her. Cause she still peeks over and rambles on.

Although Bowen was not mentioned by name in the note, she understood "Chaka Khan" to refer to her, as all the people she worked with were Hispanic except for her supervisor and the customer service manager, who were both white. The Company does not dispute this. Bowen was offended by what she perceived as a "sarcastic and hurtful" comment on her race, written by one co-worker she considered a friend, and left by another co-worker where Bowen was sure to see it. Bowen confronted Cordova the next day and asked for an apology, which Cordova refused, and they exchanged angry words. Bowen then took the note to her supervisor, Susie Blackburn, who said she would investigate.

Later that week, Bowen passed Cordova in the hall. According to Bowen's affidavit:

> Even though there was plenty of room to pass, Pat walked straight at me and turned her upper body as we came to-

---

6. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied).

7. Tex.R.Civ.P. 166a(i).

8. *Id.*

9. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

10. *Weiner v. Wasson*, 900 S.W.2d 316, 317 (Tex.1995).

11. It appears that Cordova wrote this note during work hours, as it says, "Sonia, Judy just scared me. She came up behind me. I can never finish a note or letter, for that matter."

12. Bowen's affidavit states that Chaka Khan is an African American recording star, and that other than their shared race, Cordova had no basis for equating them.

gether so that she gave me a small bump with her left shoulder. We both stopped and looked at each other, and then she looked in both directions, threw herself into a partition (which broke her fall) and then laid down on the floor and said in a loud voice, 'You did this on purpose.' ... Pat started saying that she was in pain and was afraid for her baby.

Cordova eventually went to the hospital. Bowen was placed on paid leave pending an investigation of this incident. She was instructed not to discuss the incident with anyone, but before going home, Bowen went by the meter reading department and spoke with her former supervisor, then went to Human Resources and spoke with the manager there.

The Company cleared Bowen of Cordova's assault accusation the following week, and she returned to work. Nevertheless, the Company required that she attend counseling for her "open hostility, emotional state and argumentative behavior." The Company also terminated Cordova's temporary assignment through Kelly Services. Bowen worked through that week without incident.

The next Monday, however, police officers came to the workplace and arrested Bowen on an assault complaint filed by Cordova. Bowen was incarcerated until the following day, and upon her release, she requested and was authorized leave for the rest of the week. Meanwhile, her supervisor, Susie Blackburn, prepared a status evaluation recommending that Bowen's probationary period not be extended and she be terminated. Specifically, the status evaluation gave Bowen negative evaluations in seven out of twelve standardized areas [13] and commented "employee is not a team player; does not work

harmoniously with others." Upon Bowen's return to work, she was terminated.

Bowen filed for unemployment benefits with the Texas Workforce Commission (TWC). After a hearing, a TWC hearing officer granted benefits. Susie Blackburn testified at that hearing that Bowen was discharged for failing to follow instructions, specifically: (1) "after the incident [with Cordova] ... she went over to the meter reading area and started discussing the incident with a supervisor and several employees there" after having been told to go directly home without discussing the incident; (2) earlier, on July 18, Blackburn had counseled Bowen not to bother Cordova because she was working on a special project; and (3) Bowen discussed her arrest with other employees although instructed not to, though Blackburn stated the reason for this was Bowen's "own protection" so people "wouldn't formulate or speculate."

Blackburn also relied upon Bowen's failure to "promote or display harmony among employees" as reason for her termination. When questioned by the hearing officer, Blackburn stated:

A: [W]ell, the harmony goes along with just the fact that ... of people being able to work and feel comfortable around her and they were not ... they did not feel comfortable either before or after, and especially after the alleged incident, because they were afraid.

. . .

Q: Were people afraid of her because they believed that she pushed somebody?

A: Yes, ma'am.

13. The negative evaluations were in: (1) quality of work; (2) initiative; (3) dependability; (4) conduct; (5) cooperation; (6) meeting established standards; and (7) satisfactory progress in training.

Q: Okay, so the way that she didn't have harmony around the workplace is because everybody believed that she pushed somebody?

A: Yes, ma'am.

. . .

A: And also, uh, there were, uh, complaints about Charlene, uh, gossiping, talking about others, some of them did not feel like that was real productive to them.

Blackburn described an earlier disruptive incident in March where a telephone technician had made a remark Bowen interpreted as a racial slur. During a meeting about the incident, Bowen became "very upset and very argumentive [sic] in there when he tried to explain that he didn't mean what, how she took the statement, and she basically left the room yelling and crying." She was sent home with pay. Finally, Blackburn testified:

Q: Did you have anything else you wanted to add, Ms. Blackburn?

A: Uh, let me see. [long pause] The absenteeism. Just within the period of these two incidents, of course some of them she was paid for, but then other days she had to go ahead and finish taking her vacation time and of course we worked in an area where if we do not have somebody there we have to pull somebody from another area to go ahead and relieve the switchboard.

Q: Okay, I thought you told me she was discharged for not following instructions, not displaying harmony, and being argumentative. You didn't mention anything about absenteeism. Was that also a reason for her discharge?

A: Yes, ma'am, that was the fourth one, I'm sorry.

Q: I thought you sent her home for two of the days.

A: Yes.

Q: So how could that be unexcused, if you sent her home?

A: Well, it's not that it's unexcused, it's that she could not, she felt that she could not be here.

Q: You gave her permission to go home.

A: Yes, ma'am.

Q: So then she also missed the week where she was arrested.

A: Yes, ma'am.

Q: Was that considered excused or unexcused?

A: She had time on her own time here for it, so she went ahead and took her own time. It was unplanned, though, and unscheduled.

Manny Hernandez, employee relations representative, also testified on behalf of the Electric Company at the TWC hearing. He stated that Bowen's pushing incident with Cordova "had nothing to do with her termination." Instead:

A: [W]hat you need to understand is that Charlene was very upset during this discussion that I had with her. She demonstrated a lot of anger and these are some things that the supervisor has been seeing throughout her period of employment in that department.

Q: What was she angry about?

A: She was just angry that Pat Cordova was placing blame on her for pushing her.

Q: And what did you think was wrong with her anger? In what way did she display it that was incorrect?

A: Well, in my opinion, there's a way to handle situations, and I think that she was very argumentative, she was very upset. There wasn't just a . . . there was more . . . well, she was very upset and very angry.

Hernandez also testified that "maybe none of this would have happened" if Bowen had reported the "Chaka Khan" letter to her supervisor in a timely manner, as "I think that's what created the tension in the department and it also created a hostile working environment, where we had an employee that wasn't one of our employees end up in the hospital."

In response to the interrogatory, "[s]tate all of your reasons for terminating Plaintiff's employment," the Electric Company averred that:

> Ms. Bowen, who was on probationary status, did not meet expectations. Ms. Bowen was not a team player, did not promote and display harmony in the workplace, was argumentative when given direction, did not follow instructions when advised several times ... and did not report concerns and questions promptly to her supervisor.

Bowen brought suit under the Texas Commission on Human Rights Act,[14] (TCHRA) alleging race discrimination. Following the trial court's entry of summary judgment for the Company, she appeals.

### Evidentiary framework of discrimination cases

The TCHRA prohibits employment discrimination with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. The TCHRA is modeled on federal anti-discrimination laws, and the Texas legislature intended to correlate state and federal law in employment discrimination cases.[15] Adhering to legislative intent, Texas courts have looked to federal law in interpreting the TCHRA's provisions.[16]

The Electric Company urged two grounds for summary judgment: first, that Bowen did not establish her prima facie case of discrimination; and second, even if she did, the Company conclusively established legitimate, non-discriminatory reasons for discharging Bowen. These grounds both rely upon the evidentiary construct first established in *McDonnell Douglas v. Green,*[17] which "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases."[18]

### 1. Prima facie case

 In discrimination cases based upon circumstantial evidence (and almost all are), the plaintiff must first establish a prima facie case.[19] To do this plaintiff must show: first, she is a member of a protected class; second, she suffered an adverse employment action; third, she was qualified for the job she held; and fourth, she was replaced by someone not in her protected class.[20] In establishing a prima

---

14. Tex.Lab.Code Ann. §§ 21.001–21.306 (Vernon 1996 and Supp.2001).

15. Tex.Lab.Code Ann. § 21.001 (Vernon 1996); *M.D. Anderson Hosp.*, 28 S.W.3d at 24.

16. *M.D. Anderson Hosp.*, 28 S.W.3d at 24.

17. 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See also Reeves*, 120 S.Ct. at 2106; *St.Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450

U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

18. *Reeves*, 120 S.Ct. at 2106 (quoting *St. Mary's Honor Center*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

19. *Reeves*, 120 S.Ct. at 2106.

20. *Id.* The Company argues that this element of Bowen's prima facie case should include more than showing her replacement was not within her protected class, claiming that "Bowen should be required to demonstrate

facie case, Bowen need only make a minimal showing.[21]

We conclude that Bowen has established fact questions on her prima facie case. She is African American. She worked for the Company for almost three years, including over five months of her probationary period, with only one "critical incident report" before the events which are the subject of this suit. She was terminated. She was replaced by a Hispanic female. Summary judgment could not have been correctly granted on the basis of the Company's claim that Bowen failed to establish her prima facie case.

### 2. Legitimate, nondiscriminatory reason

■ Upon plaintiff's establishing the prima facie case, the burden of production shifts to the employer to produce evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason.[22] This burden is one of production only, not persuasion, involving no credibility assessment.[23] The Company met this burden by producing evidence that Bowen was fired during her six-month probationary period based on her failure to meet expectations in various ways, including not being a team player, not promoting and displaying harmony in the workplace, being argumentative when given direction, not following instructions when advised several times,

disclosing confidential information to others, not reporting concerns and questions promptly to her supervisor causing co-workers to fear her because they believed she had pushed a pregnant co-worker, absenteeism, and being upset and angry.

### 3. Pretext

■ Once the employer articulates a legitimate nondiscriminatory reason for the adverse job action, the plaintiff may prove discrimination by showing "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[24] Plaintiff may do this "by showing that the employer's proffered explanation is unworthy of credence."[25] The Company's basis for summary judgment does not address pretext, however, stating only "[i]t is clear and undisputed that EPEC had several legitimate business reasons for terminating the Plaintiff's employment." We cannot agree that this is clear and undisputed, and after reviewing the facts and the U.S. Supreme Court's latest words on this issue, we must conclude that, if summary judgment was granted on this ground, it was error. In reaching this conclusion, we examine *Reeves* and the Fifth Circuit case law it overruled.

### Pretext plus and its rejection in Reeves

In what plaintiff characterizes as the "pretext plus" standard, the Fifth Circuit

that employees with similar conduct or performance problems, but not African American, were treated more favorably." *Reeves,* the U.S. Supreme Court's latest pronouncement in this area, clearly does not require the more stringent formulation of the prima facie case propounded by the Company. *Reeves,* 120 S.Ct. at 2106 ("respondent successively hired three persons in their thirties to fill petitioner's position"). We thus conclude that the traditional formulation is the correct one, and require only that Bowen show she was replaced by someone who was not African American.

21. *Nichols v. Loral Vought Systems Corp.,* 81 F.3d 38, 41 (5th Cir.1996); *Gold v. Exxon Corp.,* 960 S.W.2d 378, 382 (Tex.App.—Houston [14th Dist.] 1998, no pet.).

22. *Reeves,* 120 S.Ct. at 2106.

23. *Id.*

24. *Id.*

25. *Id.* (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207).

formerly required that, for plaintiff to prevail in employment discrimination cases, he or she must show both pretext and additional evidence that the employer's true reason for the adverse action was unlawful discrimination.[26] In its *Reeves* opinion, which involved a claim of age discrimination, the Fifth Circuit acknowledged that "a reasonable jury could have found that [the employer's] explanation for its employment decision was pretextual."[27] Nevertheless, the circuit court held that this alone was insufficient to sustain the jury's verdict for plaintiff:

> We must, as an essential final step, determine whether [plaintiff] presented sufficient evidence that his age motivated [the] employment decision.[28]

In making this final assessment, the court ignored plaintiff's evidence on the prima facie case and pretext, focusing only on other evidence of derogatory age-related remarks and disparately hostile treatment.[29] From this, the court concluded there was insufficient evidence to sustain the jury's verdict for plaintiff.[30]

The U.S. Supreme Court granted certiorari and reversed. It condemned the Fifth Circuit's conclusion that a prima facie case of discrimination, coupled with evidence impugning an employer's legitimate, nondiscriminatory reason could never, as a matter of law, sustain a jury's finding of discrimination. The Supreme Court found this "misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence."[31] In its *Reeves* opinion, the Supreme Court clearly repudiated the Fifth Circuit's "pretext plus" standard, holding:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.[32]

The Court noted that its earlier opinions on this issue had found that although the fact finder's rejection of the employer's legitimate nondiscriminatory reason did not compel judgment for plaintiff, nevertheless in an appropriate case it is permissible for the fact finder to infer discrimination from the falsity of the employer's explanation.[33]

■ Clearly, then, pretext plus is not the law, and fact questions on the prima facie case coupled with fact questions on pretext should be sufficient to defeat summary judgment. The only question remaining, then, is whether plaintiff's responsive evidence established a fact question on the ultimate question of discrimination. We find that it does.

■ The Company here gave a number of reasons for Ms. Bowen's termination, only two of which were given to her when she was told of the decision: that she is not a team player and did not work harmoniously with others. At the Texas Workforce Commission hearing, the rea-

**26.** See *Reeves v. Sanderson Plumbing Products,* 197 F.3d 688, 693 (5th Cir.1999), *overruled,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Walton v. Bisco Industries,* 119 F.3d 368, 370 (5th Cir.1997); *Grimes v. Texas Department of Mental Health,* 102 F.3d 137, 143 (5th Cir.1996).

**27.** *Reeves,* 197 F.3d at 693.

**28.** *Id.*

**29.** *Id.*

**30.** *Id.*

**31.** *Reeves,* 120 S.Ct. at 2108.

**32.** *Id.* at 2109.

**33.** *Id.* at 2108 (citing *St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. at 2742).

sons were expanded to include: (1) failing to follow instructions, specifically discussing the "pushing" incident with her former supervisor and bothering Cordova while she was working on a special project; (2) failing to promote or display harmony, which was explained as people being afraid of her after the "pushing" incident; (3) absenteeism; and (4) failing to report the "Chaka Khan" letter to her supervisor. The Company also presented evidence, however, that the "pushing" incident had nothing to do with Bowen's termination, and the Company cleared her of any blame for that incident after investigation. Although Blackburn cited absenteeism as a reason for dismissal, the only evidence of Bowen's absences from the workplace indicate they were at the Company's direction, or were excused. Moreover, no mention was made of absenteeism until the TWC hearing. Finally, Bowen reported the "Chaka Khan" letter to her supervisor within two days after receiving it, apparently only after making an attempt to resolve the matter without involving management. We think this evidence is sufficient to raise a fact question on pretext, and in light of *Reeves*, we must reverse.

We note that the trial court did not have the benefit of the high court's final word on this issue when it granted summary judgment. It no doubt relied upon the Fifth Circuit's pronouncements which have since been overruled. Nevertheless, under the present law, it was in error. Plaintiff's Issues for Review Two, Three and Four are sustained.

## CONCLUSION

We reverse the summary judgment and remand for further proceedings.