NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0314n.06

No. 14-3868

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 01, 2015

DEBORAH S. HUNT, Clerk

VIRGINIA CRABTREE,                                      )
                                                       )
     Plaintiff-Appellant                             )
                                                       )
v.                                                     )
                                                       )
SECRETARY,     U.S.     DEPARTMENT     OF              )
HOMELAND SECURITY,                                     )
                                                       )
     Defendant-Appellee.                             )
                                                       )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT     FOR     THE
SOUTHERN   DISTRICT   OF
OHIO

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

KETHLEDGE, Circuit Judge.   Virginia Crabtree sued her former employer, the Department of Homeland Security, for retaliation under Title VII.  The district court granted summary judgment to the Department.  We affirm.

I.

In April 2007, Crabtree began a two-year internship as an officer with the United States Customs and Border Protection (an agency within the Department) at Port Columbus in Ohio. During the internship, Crabtree was considered a probationary employee—the only one in the Columbus office.  At the end of the internship, unless her superiors decided otherwise, she would automatically become a permanent employee.

During Crabtree's internship, Craig Vette was the Port Director of the Columbus office. He reported to Area Port Director Marc Hurteau, who oversaw port operations in four states.

_____

[*] The Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, sitting by designation.

Officer Elbert Bays served as the day-to-day supervisor of all the officers in the Columbus office, including Crabtree. Crabtree also temporarily reported to two other supervisors during her internship: Officers Frank Roy and Chris Bungard.

Although Crabtree received two positive performance reviews from Bays, her employment with the Department did not always go smoothly. For example, when officers other than Bays asked her to perform tasks, Crabtree complained to Bays because she believed that only her direct supervisor should assign her work. The other officers, for their part, believed that Crabtree had a bad attitude and was unwilling to learn new tasks or take on new responsibilities. Crabtree also had difficulties interacting with the public. The record shows that she complained to her fellow officers and supervisors that members of the public treated her poorly because of her gender and her Hispanic ethnicity, but the record does not show what incidents specifically prompted these complaints.

In August 2008, a customs broker, Darlene Nedved, called Crabtree to ask why she had rejected one of Nedved's shipments. Nedved could not understand why the shipment had not cleared, because it was a recurring shipment that the agency had cleared 30 times previously. After Nedved spoke to Crabtree, she called Director Vette to complain. Nedved told Vette that Crabtree had been rude and condescending, that she would not explain why she rejected the shipment, and that she suggested that Nedved did not know how to do her job and should figure out the problem on her own.

At Vette's direction, Bays and Bungard met with Crabtree to counsel her on improving her professionalism when interacting with the public. (Crabtree says that the meeting addressed a different broker's complaint from a few months earlier, which Bays had told her lacked merit.) Bays also told Crabtree that several of her fellow officers had complained about her lack of

professionalism and bad attitude. Crabtree denied that she had done anything wrong and asserted that a single complaint from the public did not accurately reflect her professionalism overall. She also told Bays and Bungard that she felt she was being treated unfairly because she was a woman.

Soon after this counseling session, Officer Bungard asked Crabtree if she wanted to take an overtime assignment over Labor Day weekend. Crabtree said no. She later called Bungard to request a different overtime assignment for the same weekend, but he told her that, under the overtime policy, she could not pick and choose her assignments. Crabtree repeatedly asked Bungard to explain the policy, which he repeatedly did. Finally, Bungard yelled: "I am not fucking talking about this anymore, I am not a tape recorder[.]" R. 25-7 at 4. Crabtree was "very emotional" about this conversation (according to Crabtree herself) and called Bays to complain. R. 25-1 at 14. Although Bays was concerned about how upset Crabtree seemed, he explained the overtime policy to her and agreed that Bungard acted inappropriately. Bungard later apologized to Crabtree, and Bays orally counseled him about his use of profanity.

In early March 2009, Crabtree overheard Officer Oran Metker speaking to Supervisor Roy about a rescheduled flight. Crabtree said: "A flight is coming in early? Was somebody going to tell me about it?" R. 24-2 at 119. In response, Metker raised his voice and said: "Listen here, lady." *Id.* Crabtree likewise raised her voice and told Metker to speak to her professionally or not at all. She also asked Roy if he planned to intervene. Roy told Crabtree that he was sick of her and would not get involved. Crabtree later complained to Bays about Metker's comment and Roy's handling of the incident.

About a month before Crabtree's probationary period expired, Crabtree had an encounter with an airport officer named Carol Lanning. Crabtree was in a secured area of the airport and

protested when Lanning touched her badge to check its validity. Crabtree was so upset when she returned to the office that Bays and Roy asked both Crabtree and Lanning to write memos about what had occurred. In her memo, Lanning explained that she does random badge checks on a routine basis, and complained that Crabtree "had exhibited an attitude that she should be exempt from having her badge checked." R. 24-4 at 51.

Bays later met with Crabtree about the incident. He told her that she was "badge heavy" and should not assert her authority as a federal officer so aggressively. Crabtree responded that Lanning had inappropriately invaded her personal space and restricted her freedom of movement. Crabtree also made some unrelated complaints about Bungard and Roy. Bays then told Crabtree that "it is easy to make probation if you stay under the radar." R. 24-3 at 91.

After the badge-check incident, Bays asked Bungard and Roy to write memos describing their observations of Crabtree's work. Both memos were negative, and Roy recommended that the Department not convert her to permanent-employment status. Bays also wrote his own memo, which also recommended against conversion. Bays gave all three memos, plus the memos from the incident with Lanning, to Director Vette. Vette then recommended to Area Director Hurteau, who had final decision-making authority, that the Department not convert Crabtree to full-time status. Hurteau agreed, and Crabtree's employment ended in April 2009.

Two months later, Crabtree filed a discrimination complaint with the EEOC against the Department. After a two-day hearing, an Administrative Law Judge entered judgment in the Department's favor. In December 2012, Crabtree sued the Department in federal court for retaliation under Title VII, among other claims. The district court granted summary judgment to the Department. This appeal followed.

II.

A.

We review de novo the district court's grant of summary judgment to the Department. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Summary judgment is proper when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

Crabtree alleges that the Department failed to convert her to a permanent employee in retaliation for her complaints about discrimination. The Department responds that Hurteau had "legitimate, nondiscriminatory reason[s]" for not converting her: Crabtree was unprofessional and had a bad attitude. Thus, to prevail on her retaliation claim, Crabtree must show that the Department's nondiscriminatory reason is pretextual. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008).

To show pretext, a plaintiff must prove both that her employer's stated reason for ending her employment "was not the real reason for its action, *and* that the employer's real reason" was discrimination. *E.E.O.C. v. Ford Motor Co.*, No. 12-2484, --- F.3d ---, 2015 WL 1600305, at *11 (6th Cir. Apr. 10, 2015) (en banc) (emphasis in original). A plaintiff cannot show pretext if her employer proves that it honestly believed in its nondiscriminatory reason for ending her employment. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014). To demonstrate an honest belief, the employer must show that it "made a reasonably informed and considered decision" based on reasonable reliance on particularized facts. *See id.* at 960-61 (internal quotation marks omitted).

Here, Crabtree has offered no evidence that either Vette, who was responsible for making a final recommendation on whether to convert Crabtree, or Hurteau, who had final

decision-making authority, wished to retaliate against her. Vette made his recommendation after reading three memos from Crabtree's supervisors that described in detail several problems with her professionalism and attitude. Vette also considered Lanning's memorandum—which also highlighted problems with Crabtree's professionalism—and Crabtree's rebuttal. Finally, Vette knew firsthand that Crabtree had problems acting professionally when dealing with the public, because a broker had directly complained to him about her. Thus, Vette reasonably relied on these particularized facts—which demonstrated Crabtree's unprofessionalism—when he made his recommendation to Hurteau.

Hurteau, in turn, relied primarily on his conversation with Vette about Crabtree and on Vette's written recommendation—which highlighted specific problems with Crabtree's professionalism—in reaching his final decision not to convert her. R. 25-1 at 60. Thus, both Vette and Hurteau made reasonably informed and considered decisions to end Crabtree's employment for unprofessionalism. The Department has therefore shown that they honestly believed in their non-discriminatory reason for not converting Crabtree, which means that Crabtree cannot show pretext.

Crabtree offers two responses. First, she contends that Vette did not make a reasonably informed and considered decision because he did not speak to her or read her performance reviews. She also says that the record contains conflicting evidence as to whether Vette spoke to her supervisors about their observations. But so long as an employer honestly and reasonably believed the nondiscriminatory reason for its action, the employer need not use an "optimal" decision-making process that leaves "no stone unturned." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). Here, as noted above, Vette decided not to convert Crabtree after reading several detailed memos about her performance, reviewing memos about

the badge-check incident, and recalling his personal experience with the broker complaint—all of which showed that Crabtree had professionalism problems. So this argument fails.

Second, Crabtree contends that we should overturn our honest-belief precedent. But a panel of this court cannot overturn the decisions of another panel. *United States v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000). So this argument also fails.

B.

Crabtree also argues that, even if Hurteau and Vette did not end her employment for retaliatory reasons, they acted as unwitting tools for her supervisors who she says wanted to fire her for retaliatory reasons. An employer can be liable for retaliation under a "cat's paw" theory if the plaintiff shows two elements: first, a supervisor was motivated by retaliatory animus and took an action intended to result in the plaintiff's termination, and second, the action was a but-for cause of the plaintiff's termination. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427-28 (6th Cir. 2014) (*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). A plaintiff cannot establish but-for causation "if her firing was prompted by both legitimate and illegitimate factors." *Id.* (internal quotation marks omitted).

Crabtree contends that her supervisors sought to terminate her employment in retaliation for her complaints about discrimination, and that their memos caused her termination. But Vette did not rely only on the supervisors' memos in reaching his decision. Vette testified that three main incidents informed his decision not to convert Crabtree. R. 24-7 at 22-32. First, Supervisor Roy told Vette about a situation when Crabtree got into a heated dispute with a member of the public, and Roy had to intervene to calm the customer down. (Although Crabtree asserts that Roy sought her termination in retaliation for various complaints she made about him, she acknowledges that this incident occurred). Vette also relied on two observations from third

parties: Vette reviewed Lanning's description of Crabtree's unprofessional behavior during the badge check, and Vette had personally received a complaint about Crabtree from a broker. Vette said that these three incidents confirmed his conclusion that Crabtree had professionalism and attitude problems. *See id.* at 38. And Hurteau testified that he relied primarily on Vette's recommendation. Thus, Crabtree lacks evidence that her supervisors' alleged retaliatory motivations were a but-for cause of the decision not to convert her.

The district court's judgment is affirmed.