THOMAS L. LUDINGTON,
District Judge, dissenting.
I write separately to respectfully address two primary points. First, Appellant Schmidt, who was not replaced by a younger employee, has not met her prima facie burden to produce evidence raising an inference of Wal-Mart’s age discrimination. Second, Appellants, in my view, have not identified anything about Theobald’s interpretation and implementation of Wal-Mart’s ethics policy that suggests an ageist agenda. I would affirm the district court.
I.
The facts as set forth by the majority are largely uncontroversial. It is worth noting, however, that the ultimate decision-maker in this case, Joseph Theobald, was not responsible for conducting' the initial investigation into the Appellants’ al *352 leged misbehavior. Rather, Theobald’s subordinate, Asset Protection Coordinator Debbie Jenkins was. Theobald’s job was to review her investigation and reach a personnel decision based on the facts she gathered. Jenkins checked with Theobald twice during the investigation: once at its outset, when she viewed security footage of Appellants taking inventory from the store without paying for it, and again when her investigation was complete. When Theobald learned that Appellants acknowledged receiving the merchandise from a vendor, he made the decision to terminate their employment.
II.
A.
Schmidt did not demonstrate a prima facie case of age discrimination. The majority’s contention that she did rests primarily on the fact that Schmidt was terminated together with two other employees, Moffat and Thompson, as a result of the same plant-taking incident. But that conclusion conflates an important distinction between Moffat and Thompson’s prima fa-cie cases and Schmidt’s prima facie case. Because Schmidt produced no direct evidence of age discrimination and Schmidt was not replaced by a younger employee, the district court correctly concluded that she could not establish disparate treatment inferentially utilizing the McDonnell-Douglas burden shifting analysis.
As the majority correctly emphasizes, the requirement for inferentially establishing a prima facie case of age discrimination is not as stringent as that applied by the district court. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (explaining that the fourth element of a prima facie case requires only “circumstances that support an inference of discrimination”). A plaintiff need not show she was replaced by a younger employee if she can show circumstances that give rise to an inference of age discrimination. The majority, however, then proceeds to apply a rule, the authority for which I am unaware, that permits Schmidt to establish a prima facie case by simple association. That is, if a plaintiff such as Schmidt is terminated along with other employees who can establish a prima facie case — even if they do so only by identifying a younger replacement — the plaintiff is entitled to borrow the inference of discrimination that arises out of the relative ages of her co-workers and her co-workers’ replacements. This is a new rule that incorporates disparate-impact-like reasoning into a disparate treatment case. There are several problems with such a rule.
The first problem relates to the deficiency of corroborative evidence justifying application of the rule in this case. Schmidt offers nothing analytically to justify associating her ease with Moffat and Thompson’s eases other than the fact that it arose in the context of the plant-taking incident, which she also argues did not actually motivate Wal-Mart’s decision. Schmidt has not identified any evidence about the process Wal-Mart employed to hire Moffat and Thompson’s replacements that suggest age was at all relevant. Schmidt has not marshaled any information about the number of applicants and their ages or the selection method that would suggest age was a discriminating factor. And Schmidt’s only effort to address the subject of age at all was to explain in her termination interview that she thought there were younger employees who she had heard engaged in similar misconduct but who were not terminated. But, despite the availability of discovery Schmidt produced no evidence that the names she identified in the termination interview were actually employees, that they were in *353 fact younger employees, that they engaged in similar misconduct or that their alleged misconduct was responded to by the same decision-maker. That is, in summary, Schmidt offered no admissible evidence that Wal-Mart was discriminating based on age other than observing that two of her co-workers were replaced by younger employees.
The second problem with this rule is that deploying this -sort-of disparate impact analysis into the calculus of the McDonnell-Douglas prima facie case evi-dentiary framework has no express limitation. Is it important that it was two of three employees that were replaced by younger workers? Does the piggy-backing plaintiff have any burden of proof concerning the circumstances of replacement hires? And how should Wal-Mart’s (or any future defendant’s) usual opportunity for rebuttal in disparate-impact analysis be reviewed when employed to satisfy the prima facie element of an inference-of-disparate-treatment age discrimination claim? Respectfully, proof of the replacement of two out of three employees with younger employees does not, without more, justify an inference of disparate age discrimination.
Although I agree the district court erred in applying the wrong standard to Schmidt’s prima facie case, I would affirm the result reached by the district court.
B.
The decision to discredit Theobald’s termination of Appellants is more problematic. "While district courts should hesitate to dispose of a case on summary judgment after a prima facie case has been established, district courts should be equally hesitant to turn the interpretation of corporate policy into a question for a civil jury. There is no shortage of authority urging caution when it comes to analyzing the internal personnel operations of a corporation when there are no indicia, even faint, of discriminatory animus. See, e.g., Haughton v. Orchid Automation, 206 Fed.Appx. 524, 532 (6th Cir.2006) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir.1992)) (internal quotation marks omitted). Before judgment may be passed on a defendant’s employment decision a plaintiff must show that “discrimination was the real reason for the adverse employment action.” Haughton, 206 Fed.Appx. at 531-32 (6th Cir.2006) (quoting St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); see also Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1116-17 (6th Cir.2001) (“[An] employee cannot establish that the reason [for termination] was pretextual simply because it is ultimately shown to be incorrect.”).
That bears emphasizing. Aside from an old corporate memo, which the majority rightly discredits, Appellants have not identified any evidence of ageist animus on the part of the Wal-Mart decision-makers at the Brooklyn, Ohio store. And there appears to be no disagreement that while the plants at issue had little if any value, Wal-Mart’s ethics rules served important purposes — to justify the integrity of their product pricing and to emphasize their employees’ duty to protect Wal-Mart’s inventory, particularly the perishable sort. One can see why Wal-Mart could face very tangible business risks if it was not disciplined in enforcing these principles, even if in a set of circumstances - such as this, where inventory of little monetary value is involved. Indeed, there is no dispute between the parties that Wal-Mart extensively trained its employees, including Appellants, on its ethics policy and ensured its employees, again including Appellants, passed a computer-based lesson (“CBL”) demonstrating proficiency in that policy. *354 See Dep. of Christopher Moffat, ECF No, 19-1, Page ID 329-331; Dep. of Clarissa Thompson, ECF No. 19-2, Page ID 415-16; Dep. of Patricia Schmidt, ECF No. 19-3, Page ID 502-07. And there is also no dispute that the CBL gave examples of gifts and gratuities to include “discontinued or no longer used samples and merchandise” and encouraged .employees to obtain advice if they were unsure of the policy. Moffat Corp. Ethics CBL, ECF No. 19-4, Page ID 584.
Discovery was closed. Appellants produced no additional evidence of ageism. Despite this, the suggestion is that Wal-Mart’s decision-makers at its Brooklyn store were sufficiently inept that one must, taking the facts in the light most favorable to the Appellants, conclude that age might have been a motivation for Appellants’ termination. I do not believe Reeves v. Sand-erson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), cited for this proposition, to be controlling in this case. The facts of Reeves are inapposite to the facts Appellants have actually developed in this case. This dispute is more appropriately governed by Sixth Circuit caselaw counseling deference to business- judgment. The mere fact Theobald did not gather more evidence, instead relying on evidence gathered by a direct subordinate tasked with investigating Appellants’ misconduct, does not meet this Court’s standard for proof of pretext.
1.
The majority concludes that the decision-making process utilized by Theobald was so deficient that no proof or indicia of age discrimination need be proved by Appellants to survive summary judgment. According to the majority, such a deficient process is itself an analog for intentional ageist animus. I do not believe that existing legal authority supports that proposition.
Reeves, in my view, requires affirmance. In Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 504 (2007), this Court held that under Reeves a plaintiff must make a “substantial showing that his employer’s stated reason for terminating him was false.” But because the plaintiff “fail[ed] to adduce any evidence that he was fired for a reason other than poor job performance” his case could not survive summary judgment under Reeves. Id. Thus, Abdulnour highlights an important point. Reeves demands that a plaintiff demonstrate the falsity of an employer’s justification for termination, not its mere deficiency. The facts of Reeves alone are sufficient to demonstrate this point. Surviving summary judgment requires that “a plaintiffs prima facie case, combined with sufficient evidence to find that the employer’s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.” 530 U.S. at 148, 120 S.Ct. 2097 (emphasis added).
In Reeves, the employee-petitioner was terminated due to “numerous timekeeping errors and misrepresentations on the part of [the petitioner and two of his coworkers.]” Id. at 138, 120 S.Ct. 2097 (quoting Reeves v. Sanderson Plumbing Products, Inc., 197 F.3d 688, 690 (5th Cir.1999)) (internal quotation marks omitted). After being terminated, the petitioner, Reeves, filed suit against his employer under the ADEA “contending that he had been fired because of his age[.]” Id. The ease proceeded to trial and the jury returned a verdict for Reeves. The defendant filed a motion for judgment as a matter of law that was denied by the district court. The Fifth Circuit reversed.
In reversing, the Fifth Circuit held that “[Reeves] had not introduced sufficient ev *355 idence to sustain the jury’s finding of unlawful discrimination.” Id. at 139, 120 S.Ct. 2097. The Fifth Circuit noted that Reeves likely produced sufficient evidence to demonstrate pretext but he did not prove the ultimate issue: whether the employer’s decision to terminate was motivated by Reeves’ age. The Fifth Circuit reached this conclusion because the .evidence of ageism on the part of one of Reeves’ supervisors — certain ageist comments — was unrelated to Reeve’s actual termination. Reeves did not introduce any evidence that the two other supervisors that participated in his termination “were motivated by age[.]” Id. “On this basis, the court concluded that petitioner had not introduced sufficient evidence for a rational jury to conclude that he had been discharged because of his age.” Id. at 140, 120 S.Ct. 2097.
The Supreme Court disagreed but did so because Reeves “made a substantial showing that respondent’s explanation was false.” Id. at 144, 120 S.Ct. 2097. The evidence supporting the nondiscriminatory explanation for Reeves’ discharge “consisted primarily of testimony by Chesnut and Sanderson and documentation of petitioner’s alleged ‘shoddy record keeping.’ ” Id. at 143, 120 S.Ct. 2097 (quoting Reeves, 197 F.3d at 692). This evidence purportedly revealed that the area Reeves oversaw was very lax, due in part to Reeves “not correctly recording the absences and hours of employees.” Id. .at 144, 120 S.Ct. 2097. The employer-respondent also produced evidence of employees that Reeves supervised who committed attendance violations but who went undisciplined by Reeves. Ultimately, the employer claimed that Reeves was terminated for falsifying company pay records since employees under Reeves’ charge were being paid for hours Reeves failed to indicate they did not actually work.
While this explanation established a nondiscriminatory basis on which Reeves was terminated, Reeves responded by disproving the respondent’s claims of deficient performance. The Supreme Court detailed at length the ways in which Reeves produced evidence that disproved his former employer’s nondiscriminatory reason for termination. Id. at 144-45, 120 S.Ct. 2097. Many of Reeves’ explanations resulted in concessions by his former supervisor that Reeves’ allegedly terminable offenses were actually not offenses at all. Many resulted from assumptions made by management when confronted with less-than-clear records. For example, Reeves’ superior admitted that the timeclock at the plant often malfunctioned. Wfiien it did, a supervisor such as Reeves would write in the day’s start time — 7 a.m. — as the employee’s arrival time if the employee was at his station on time. This undercut the employer’s assertion that -an employee who punched in at 7 a.m. could not be at his station by 7 a.m. Thus, Reeves rebutted, with admissible evidence, each factual assertion that his employer advanced to justify his termination.
Because of the evidence that petitioner-plaintiff Reeves’ produced that his employer’s reasons for terminating him were false, the Supreme Court did away with the requirement that a plaintiff show some additional indicia of age discrimination to establish a prima facie ease and-survive summary judgment. The Supreme Court explained, however, that an employer’s nondiscriminatory explanation for a plaintiffs termination must be false if it is to stand in for indicia of discrimination. That has also been the law of our Circuit. See, e.g., Shah v. NXP Semiconductors USA, Inc., 507 Fed.Appx. 483 (6th Cir.2012) (holding that appellant could not establish that the process of hiring her eventual replacement before terminating her proves that the employer’s-reason for termination *356 was false and that, as a result, she needed to prove discriminatory animus); cf. Hale v. ABF Freight Sys., Inc., 503 Fed.Appx. 323, 335-36 (6th Cir.2012) (reversing summary judgment in ADEA case where there was no evidence of ageism but there was proof of direct hostility toward the plaintiff by the ultimate decision-maker that was not related to stated reason for termination).
One could be critical of Theobald for a number of reasons. While his methods, and his decision that the case required termination rather than coaching, may leave something to be desired, his explanation demonstrated his ability to distinguish the relevant difference between Wal-Mart’s integrity policy and its policy prohibiting employee theft. When asked whether employees would violate the gifts policy by retrieving dead plants from the trash without the vendor’s knowledge, he answered no. Dep. of Joseph Theobald, EOF No. 20-4, Page ID 104142. When posed a question concerning Appellants’ behavior in this case and whether that violated the gifts policy, he answered yes. Id. at 1038-39. When asked why this situation resulted in such a harsh penalty he directed his questioner’s attention to Wal-Mart’s decision to make integrity issues an immediately terminable offense. Id. at 1041. His answer comports with what he listed as the reason for Appellants’ termination when he initially made the decision: “integrity issue.”
While Theobald acknowledged that he did not review the documentary evidence available to him about Appellants’ interviews with Jenkins, he did rely upon Appellants’ admissions to Jenkins during their investigatory interviews. Appellants admitted during their interviews that they asked a vendor if they could take home items which they were responsible for overseeing, which is all the information that Wal-Mart’s policy and the law required Theobald to rely upon. Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir.1998) (“[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.”). Far from leaving numerous stones unturned, Theobald relied on the facts gathered by Jenkins, a permissible means of decision-making. See Crabtree v. Sec’y, U.S. Dep’t of Homeland Sec., No. 14-3868, 611 Fed.Appx. 256, 260, 2015 WL 1948267, at *4 (6th Cir. May 1, 2015) (holding that a decision-maker’s reliance on reports of misbehavior from subordinates can constitute reasonable reliance on particularized facts).
Finally, I do not believe a jury could, without more, conclude that Theobald’s decision was actually pretext for age discrimination. As addressed above, proof of the falsity of an employer’s proffered reason for termination has always been distinguished from a harsh or erroneous application of corporate policy. The law should continue to treat the two differently.
2.
Assuming for sake of argument that Appellants could conceivably rebut Wal-Mart’s legitimate non-discriminatory reason for termination, that does not end my concern. “Under this circuit’s modified honest-belief doctrine, for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.” Russell v. Univ. of Toledo, 537 F.3d 596, 605 (6th Cir.2008) (quoting Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir.2006)) (internal quotation marks omitted) (emphasis in original). The majority notes that “Theobald’s own testimony shows that he did not ascertain *357 or know all the relevant facts[ ] and that he did not think it important to know such facts before terminating Plaintiffs’ employment.” For that reason, the majority concludes, “[t]he honest-belief defense ... does not apply.”
That, in my view, misapplies the honest belief rule. The honest belief rule asks if the reliance by the employer on the “particularized facts that were before it at the time the decision was made” was reason- • able. Russell, 537 F.3d at 605. Put another way, “the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.” Smith, 155 F.3d at 807. No evidence adduced by Appellants, or identified by the majority would make Theobald’s reliance on the facts before him unreasonable. True, he could have gathered more information or undertaken a more deliberate procedure. But Appellants admitted, and all parties agree, that they took the plants after asking the vendor if they could. See Crabtree, 611 Fed.Appx. at 260, 2015 WL 1948267, at *4 (holding that it is reasonable for a decision maker to not directly ascertain facts but instead rely on facts communicated by subordinate investigators). Theo-bald’s reliance on the Appellants’ admissions of culpability was reasonable.
C.
One last point is important. Allowing an ADEA case to proceed to trial with no material evidence of age discrimination is particularly concerning because the ADEA does not authorize a mixed-motive jury question. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). This means that a reasonable juror must conclude not only that WalMart possessed some ageist animus in arriving at its termination decision, but that the decision to terminate was predicated only on Appellants’ age. How any reasonable juror could do so in a case where the plaintiffs have admitted to committing the offending conduct and the plaintiffs have marshaled virtually no evidence that the plaintiffs’ ages were Wal-Mart’s guiding criteria is puzzling.
III.
Respectfully, I would affirm the district court’s conclusion that Appellants “have not supplied evidence by which the fact finder might reasonably infer the existence of a discriminatory motive.” August 1, 2014 Opinion & Order 17, EOF No. 36, Page ID 2091.