Manny CASILLAS, Appellant,

v.

STATE OFFICE OF RISK MANAGEMENT, Appellee.

No. 08–03–00212–CV.

Court of Appeals of Texas, El Paso.

Sept. 16, 2004.

Rehearing Overruled Nov. 3, 2004.

Monty B. Roberson, El Paso, for Appellant.

Mark D. Delemos, Asst. Atty. Gen., Austin, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Manny Casillas appeals from a no-evidence summary judgment granted in favor of the State Office of Risk Management (SORM). Determining that we have jurisdiction over the appeal, and that the no-

evidence summary judgment was improperly granted, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Casillas was injured in the course of his employment with the State Department of Human Resources. He sought lifetime income benefits (LIBS) under the Texas Workers' Compensation Act (the Act), claiming the loss of both hands. A hearing officer with the Texas Workers' Compensation Commission (the Commission) determined that he was not entitled to the benefits, and an appeals panel affirmed the hearing officer's decision. Thereafter, Casillas filed a petition for judicial review.

SORM filed a motion for no-evidence summary judgment, arguing that there is no evidence that Casillas suffered a total and permanent loss of use of either of his hands. In his response, Casillas relied on an EMG/NCV report, his own affidavit, and the affidavit of Dr. Manuel Moreno.

The EMG/NCV report indicates that Casillas has "rotator cuff syndrome right upper extremity" and that Casillas reported persistent pain in his right shoulder and lateral neck area "without distal radiation into the upper arm, forearm, or hand." The report's summary states:

> Abnormal study, both upper extremities, findings demonstrate median nerve conduction delay at the wrist compatible with a clinical diagnosis of carpal tunnel syndrome, mild to moderate in degree as manifested by delay in both motor and sensory transmission across the carpal tunnel in the absence of distal denervation phenomena. The findings are slightly more prominent in the right side than the left. There is no evidence of more proximal entrapment syndrome or radicular findings in either upper limb at the present time.

The report was signed by Martin Heitzman, M.D. Dr. Heitzman's area of exper-

tise is not given. Casillas made no effort to authenticate the EMG/NCV report or to establish that it falls within a hearsay exception. SORM objected to the report on both of these grounds.

In his affidavit, Casillas stated that he sustained an injury to his bilateral upper extremity and that he has been diagnosed with bilateral carpal tunnel syndrome. He further stated: "Initially, the condition with my right upper extremity was more severe, but as time has gone by I have experienced similar problems with my left upper extremity. The condition has deteriorated in both upper extremities to the point that I cannot work."

In his affidavit, Moreno stated that he is a licensed chiropractor in Texas, that he is both a board-certified chiropractic orthopedist and a board-certified chiropractic neurologist, and that he has had many years of experience in both of the areas in which he is board certified. He further stated:

> I am the treating doctor for Mr. Manny Casillas who injured both his upper extremities on January 24, 1991. An EMG/NCV exam was performed on Mr. Casillas. A copy is attached to this Affidavit. There was an abnormal finding and Mr. Casillas was diagnosed with bilateral carpal tunnel syndrome. Initially, Mr. Casillas had more problems with his right upper extremity. Mr. Casillas had several surgeries on that extremity. As time past [sic], Mr. Casillas has developed more severe problems with his left upper extremity. These problems have deteriorated to the point that Mr. Casillas' problems with his left upper extremity are as bad as the problems with his right upper extremity. Mr. Casillas' carpal tunnel syndrome affects both his upper extremities from his wrist up both arms to his shoulders. His condition has deteriorated to the

point that he can no longer get and keep employment with the use of both his hands at or above the wrist. This opinion [h]as been rendered within a reasonable degree of medical probability.

Although Moreno stated that a copy of the EMG/NCV report was attached to his affidavit, a copy was not attached. SORM objected to Moreno's affidavit on the ground that the opinions in the affidavit were based on the EMG/NCV report, and Moreno was not qualified to interpret that report because he is a chiropractor rather than a radiologist. SORM also asserted that Moreno could not authenticate the report because he was not its custodian.

Casillas filed a reply in which he simply pointed out that the Act defines "doctor" to include a chiropractor. *See* Tex. Lab. Code Ann. § 401.011(17) (Vernon Supp. 2004–05). He did not address SORM's objections to the EMG/NCV report.

### JURISDICTION

■ Before turning to the merits of this appeal, we must first address SORM's contention that we lack jurisdiction. This contention is based on section 410.258 of the Act.

Section 410.258 provides:

> The party who initiated a proceeding [for judicial review] must file any proposed judgment or settlement made by the parties to the proceeding, including a proposed default judgment, with the executive director of the commission not later than the 30th day before the date on which the court is scheduled to enter the judgment or approve the settlement. The proposed judgment or settlement must be mailed to the executive director by certified mail, return receipt requested.

*Id.* § 410.258(a). If the Commission determines that the proposed judgment or settlement does not comply with the law, the Commission has thirty days to intervene in the judicial proceeding. *Id.* § 410.258(c). The statute further provides, "A judgment entered or settlement approved without complying with the requirements of this section is void." *Id.* § 410.258(f).

■ We have held that compliance with section 410.258 is mandatory and jurisdictional and that the failure to file a proposed judgment with the Commission renders the judgment void. *Ins. Co. of State of Pa. v. Martinez,* 18 S.W.3d 844, 848 (Tex.App.-El Paso 2000, no pet.). We do not have jurisdiction to consider the merits of an appeal from a void judgment. *Id.* at 847. We may only set aside the void judgment and dismiss the appeal. *Id.*

■ SORM claims that in this case the trial judge heard arguments on the summary judgment motion on the same day that he signed the judgment and therefore the judgment was not filed with the Commission thirty days before it was scheduled to be entered. We presume the regularity of a judgment absent controverting matter in the record. *See Gen. Elec. Capital Assurance Co. v. Jackson,* 135 S.W.3d 849, 853 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Cliff v. Bonner,* 770 S.W.2d 97, 98 (Tex.App.-Corpus Christi 1989, writ denied); *Maddux v. Booth,* 108 S.W.2d 329, 331 (Tex.Civ.App.-Amarillo 1937, no writ); *King v. King,* 91 S.W.2d 511, 512 (Tex.Civ.App.-El Paso 1936, writ dism'd).

SORM filed its summary judgment motion on February 10, 2003. The trial judge signed the summary judgment on March 11, 2003. The judgment does not state that the judge heard arguments on the motion; it simply states that the court "considered" the motion and "is of the opinion" that the motion should be granted. Therefore, the judgment does not establish that arguments were heard on the day the judgment was signed. There is

nothing else in the record to establish this fact.[1]

Moreover, even if arguments were heard on the day the judgment was signed, that fact alone does not establish that section 410.258 was violated. The statute only requires that a "proposed judgment" be filed with the Commission thirty days before the court is scheduled to enter the judgment. TEX. LAB.CODE ANN. § 410.258(a). The statute does not prohibit a party from filing a proposed judgment before arguments are heard on a summary judgment motion.

SORM suggests that compliance with section 410.258 must be shown on the face of the judgment. It cites section 410.257, as well as section 410.258 for this assertion. Section 410.257 sets forth certain things that may and may not be included in a judgment. *See id.* § 410.257(b)-(d). It also provides, "A judgment that on its face does not comply with this section is void." *Id.* § 410.257(f). But SORM does not argue that section 410.257 was violated

in this case; it only argues that section 410.258 was violated. We find no requirement in section 410.258 that compliance with that section must be reflected on the face of the judgment. *See id.* § 410.258(f). We will not import the language from section 410.257(f) into section 410.258(f).

Furthermore, the judgment does not violate section 410.258 "on its face." The judgment, as well as the entire record, is simply silent on the question of compliance with the statute. Therefore, we cannot say that the judgment is void and we will consider the merits of the appeal.[2]

### STANDARD OF REVIEW

 We apply a *de novo* standard of review to summary judgments. *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 904 (Tex.App.-El Paso 2001, pet. denied). Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judg-

1. In the appendix to its brief, SORM has included a copy of an order setting the summary judgment hearing for March 11. This order is not in the record, and the copy included in SORM's appendix is neither certified nor sworn. This Court "may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction." TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 2004). This statute authorizes this Court to consider evidence outside the appellate record to determine whether the judgment being appealed is void. *See Mellon Serv. Co. v. Touche Ross & Co.*, 946 S.W.2d 862, 863–64 (Tex.App.-Houston [14th Dist.] 1997, no writ). We decline to exercise this authority to consider the unsworn and uncertified copy of the order included in SORM's appendix because such an order could have properly been made part of the appellate record. *See* TEX.R.APP. P. 34.5(b)(1), (c)(1). We also will not consider the unsworn assertions in SORM's brief.

2. In addition to the March 11 summary judgment, the trial judge signed a second sum-

mary judgment on March 17, 2003, and a third summary judgment on June 16, 2003. In oral arguments before this Court, SORM's counsel asserted that a proposed judgment was filed with the Commission thirty days before the June 16 summary judgment was signed. He concluded that the June 16 judgment is final because a timely notice of appeal was not filed after it was signed. Assuming the truth of counsel's factual assertion, we disagree with his legal conclusion. "In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." TEX.R.APP. P. 27.1(a). If the proposed judgment was not actually filed until thirty days before the June 16 judgment was signed, then the March 11 judgment is void, the trial court continued to have jurisdiction to rule on the pending summary judgment motion, the June 16 judgment is not void, and the prematurely filed notice of appeal perfected an appeal of that judgment, giving this Court jurisdiction.

ment as we apply in reviewing a directed verdict. *Id.* at 904–05. A no-evidence summary judgment is improper if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003). We view the evidence in the light most favorable to the nonmovant. *Id.*

### ELIGIBILITY FOR LIFETIME INCOME BENEFITS

 A person is eligible for lifetime income benefits if he sustains the "loss of both hands at or above the wrist." TEX. LAB.CODE ANN. § 408.161(a)(3). The Act provides that "the total and permanent loss of use of a body part is the loss of that body part." *Id.* § 408.161(b). A worker sustains the total and permanent loss of use of a body part if he cannot get and keep employment requiring the use of that body part. *Pac. Employers Ins. Co. v. Dayton,* 958 S.W.2d 452, 458–59 (Tex.App.-Fort Worth 1997, pet. denied).

Casillas argues that his summary judgment evidence raised a genuine issue of material fact as to whether he sustained the total and permanent loss of use of both of his hands. SORM argues that Casillas did not present any admissible, competent evidence and therefore did not raise a fact issue.

SORM asserts on appeal, as it did in the trial court, that Moreno's affidavit was not competent evidence because Moreno is not qualified to interpret the EMG/NCV report. We find it unnecessary to consider whether a chiropractor is qualified to interpret an EMG/NCV report, because a fair reading of Moreno's affidavit reveals that Moreno's opinion was based on his treatment of Casillas, not on his interpretation of the report.

The EMG/NCV report states that the examination occurred on November 12, 1992. Although most of the report is incomprehensible to a layperson, the report's summary states that the exam resulted in an "abnormal" finding and that Casillas had a "mild to moderate" case of carpal tunnel syndrome, with the findings being "slightly more prominent in the right side than the left."

Moreno's affidavit is dated February 27, 2003—more than ten years after the EMG/NCV exam. In the affidavit, Moreno referred to the EMG/NCV exam, noting that there was an abnormal finding, that Casillas was diagnosed with bilateral carpal tunnel syndrome, and that the condition was initially more severe in the right upper extremity. That much is apparent from reading the report's summary. Moreno then stated that as time passed, Casillas developed severe problems with his left upper extremity, that Casillas's problems with his left upper extremity are now as bad as his problems with his right upper extremity, that Casillas's carpal tunnel syndrome affects both his upper extremities from the wrists up to the shoulders, and that Casillas's "condition has deteriorated to the point that he can no longer get and keep employment with the use of both his hands at or above the wrist." Moreno also stated that he is an experienced board-certified chiropractic orthopedist and chiropractic neurologist and that he is Casillas's treating physician.

Thus, it is apparent that Moreno's opinion was not based on the EMG/NCV report. His opinion actually differed with the findings in the report's summary. Moreno did not attempt to interpret the EMG/NCV report; rather, he explained how Casillas's condition has deteriorated over the ten years since the EMG/NCV exam was performed. The affidavit indicates that Moreno was qualified to give an opinion on Casillas's condition based on his treatment of Casillas and his board certifi-

cations in chiropractic orthopedics and chiropractic neurology.

 We conclude that Moreno's affidavit, standing alone, is sufficient to raise a fact question as to whether Casillas has lost the use of both of his hands at or above the wrists. Therefore, we find it unnecessary to address whether the EMG/NCV report was admissible, either alone or in conjunction with Moreno's affidavit.[3]

### CONCLUSION

For the reasons stated herein, we sustain Casillas's issue on appeal, reverse the summary judgment, and remand the cause to the trial court for further proceedings consistent with this opinion.

---

**3.** In oral arguments before this Court, SORM's counsel contended that Casillas failed to establish a causal link between his injuries and his employment. The summary judgment motion generally asserted in several places that Casillas did not have any evidence to support his claim for lifetime income benefits. But the only specific ground in the motion was that Casillas "cannot prove that he has suffered a 'total and permanent loss' of use of either of his hands, let alone loss of 'both' hands at or above the wrist." We may uphold the summary judgment only on this specific ground. *Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 791 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *see also* TEX.R. CIV. P. 166a(i) ("The motion must state the elements as to which there is no evidence.").